DECISION AND JOURNAL ENTRY
Defendants-appellants Clyde and Marjorie Provens (Sellers) have appealed from a judgment of the small claims division in the Barberton Municipal Court that awarded plaintiff-appellee Timothy N. Pickard (Buyer) $3,000 plus costs and interest. This Court reverses.
 I.
On July 1, 1996, Kali Greathouse, agent and daughter of Buyer, saw the advertisement for the property located at 1342 Center Road, Franklin Township.[1] On that same day, Greathouse drove to the property and requested permission from Sellers to inspect the premises. Sellers had moved out of the house in 1995. After inspecting the property, Greathouse left and later returned with Buyer. The two met with Jack Harig, Sellers' agent, to inspect the property.
Shortly thereafter, Buyer submitted an offer to Sellers for $64,176, which the Sellers accepted. Buyer and Sellers signed a purchase agreement that contained an "as is" provision and stated that Buyer was responsible for all inspections and repairs. Prior to the closing, Buyer hired Enviro Services, Inc. to test the water supply. Greathouse moved into the house during February 1997. After moving into the house, Greathouse discovered that the well did not produce an adequate amount of water. Buyer had a new well dug during 1998.
On February 25, 1998, Buyer filed a complaint against Sellers in the small claims division of the Barberton Municipal Court alleging that Sellers had failed to disclose the problems with the condition of the well. The matter was argued on May 6, 1998 before a magistrate. On November 5, 1998, the magistrate entered judgment for Buyer in the amount of $3000 plus costs and interest. Sellers objected to the magistrate's decision, and the trial court entered a judgment adopting the magistrate's decision on November 20, 1998.[2] Seller moved the trial court to stay the execution of the order and filed a timely notice of appeal, asserting three assignments of error.
II.
A.
Assignment of Error Number One
 The trial court erred when it refused to apply common law principles regarding sales of real property in an "as is" condition.
 Essentially, Sellers have argued that the common law principles are still applicable despite the adoption of the residential property disclosure requirements in R.C. 5302.30. This Court agrees.
Under the doctrine of caveat emptor, once a buyer signs a real estate contract that contains an "as is" provision, the seller is relieved of any duty to disclose. Dennison v. Koba
(1993), 86 Ohio App.3d 605, 609. R.C. 5302.30(J) provides, in part:
 The disclosure requirements of this section do not bar, and shall not be construed as barring, the application of any legal or equitable defense that a transferor of residential real property may assert in a civil action commenced against the transferor by a prospective or actual transferee of that property.
The Ohio Supreme Court also stated that:
 The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of vendor.
(Citations omitted). Layman v. Binns (1988), 35 Ohio St.3d 176, at syllabus. Because the doctrine of caveat emptor is still applicable in Ohio, the trial court erred when it did not consider Sellers' defense. See Hearty v. First MeritBank, N.A. (Nov. 24, 1999), Summit App. No. 19273, unreported, at 5. Accordingly, Sellers' first assignment of error is sustained.
B.
Assignment of Error Number Two
 The trial court erred, as a matter of law, when it adopted the decision of the Magistrate which found [Sellers] liable to [Buyer] for failure to disclose a slow, but functioning, water well in an "as is" sale of real property without requiring [Buyer] to prove fraudulent concealment or fraudulent misrepresentation by [Sellers].
 Assignment of Error Number Three
 The decision of the trial court went against the manifest weight of the evidence.
 Sellers' second and third assignments of error will be discussed together because of interrelated issues. Having determined that the trial court should have considered Sellers' defense, this Court will discuss the application of the doctrine of caveat emptor in the case at bar. In their second and third assignment of errors, Sellers have asserted that the decision of the trial court was against the manifest weight of the evidence because Buyer could not prove any claim of fraud. This Court agrees.
When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born
(Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175; see, alsoState v. Otten (1986), 33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
The doctrine of caveat emptor does not apply if the condition is a latent defect. See Layman, 35 Ohio St.3d at syllabus. A latent defect is one that could not have been discovered by an ordinary prudent person upon a reasonable inspection. See Tiptonv. Nuzum (1992), 84 Ohio App.3d 33, 38. This Court has also determined that compliance with R.C. 5302.30 does not eliminate the Ohio common law claims of fraud: fraudulent misrepresentation, fraudulent concealment, and fraudulent nondisclosure. See Dennison, 86 Ohio App.3d at 609. Because the trial court mentioned all three types of fraud in its judgment entry, this Court will address them all.
In the case at bar, the trial court found that Sellers could not rely on the "as is" provision as a defense to a claim of fraud. The journal entry also indicated that based on R.C.5302.30, Sellers were required to disclose the water supply problem. The Residential Property Disclosure Form indicated that Sellers acknowledged that the source of the water supply was from a well. Sellers and their agent, Harig, testified that they had told Buyer and his agent, Greathouse, that the condition of the well and septic system were unknown because no one had occupied the house for a year. Sellers' agent, Greathouse, testified that when inspecting the house she noted that the water pressure was good, the water was discolored, and the washer and dryer were connected to the water supply. Greathouse added that Sellers had told her that they had just put money into the well.
The record also revealed that prior to purchasing the property, Buyer inserted the following into the agreement: "Buyer is responsible for all inspections and repairs. Buyer acknowledges that the property is being sold in "AS IS condition" At Buyer's request, the well was tested for bacteria by Enviro Services, Inc. on August 13, 1996. The test came back positive for bacteria. A second test was conducted by Enviro Services, Inc. on August 19, 1996; which stated that the well was operational and the water was safe for drinking. Lastly, the report submitted from Enviro Services, Inc. revealed that Buyer did not request the company to test the flow rate of the well.
In light of the foregoing, this Court finds that the trial court erred in allowing Buyer to continue with his claim of fraudulent nondisclosure. The record revealed that Seller disclosed the source of the water and both parties signed a purchase agreement which contained an "as is" provision. Once Buyer accepted the agreement, Sellers could not be liable for fraudulent nondisclosure. Because Buyer had unlimited access to examine the house and was on notice to further inquire about the well, the water supply problem was not a latent defect. Once aware of a possible problem, the buyer has a duty to either (1) make further inquiry of the owner, or (2) seek the advice of someone with sufficient knowledge to appraise the defect. Tipton,84 Ohio App.3d at 38. Therefore, Sellers were entitled to use the doctrine of caveat emptor as a shield from Buyer's claim of fraudulent nondisclosure.
Although the "as is" provision protected Sellers from a claim of fraudulent nondisclosure, such provision does not preclude recovery for fraudulent misrepresentation or concealment.Dennison, 86 Ohio App.3d at 609. In order to succeed on a claim of fraudulent misrepresentation or concealment, the party seeking to prove the fraud must establish all of the following:
 (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.
(Citations omitted.) Williams v. Aetna Fin. Co. (1998),83 Ohio St.3d 464, 475, certiorari denied (1999) 119 S.Ct. 1357,143 L.Ed.2d 518.
In the case at bar, Buyer has argued that Sellers concealed the fact that they used to have to monitor the flow-rate when doing laundry. The record in this case revealed that Buyer inspected the property and tested the water supply. Buyer also had an independent party, Enviro Services, Inc., perform various tests on the well. Sellers, as well as their agent, told Buyer that they had not used the well in over a year. Sellers also stated that, to the best of their knowledge, the well was in working order and that they had found the water supply to be adequate.
Based on the above evidence, this Court concludes that the trier of fact clearly lost its way in determining that Buyer justifiably relied on any misrepresentment or concealment from Sellers concerning the flow-rate of the well. Sellers told Buyer that they had not used the house in over a year and that they were not sure of the condition of the well. Buyer had every opportunity to inspect the water supply, including the opportunity to have an independent party check the flow-rate of the well. The condition of the well was easily discoverable after Buyer took possession of the house. Buyer should have been alerted to the possibility that the water supply may be inadequate because no one had used it in over a year and the tests from Enviro Services, Inc. came back with bacteria. Yet, Buyer chose not to take any steps to further investigate the flow-rate of the well. "When a plaintiff claiming fraud in the sale of property has repeated opportunities to inspect the property, he will be charged with the knowledge of conditions that a reasonable inspection would have disclosed." Eiland v. Coldwell Banker Hunter Realty (1997),122 Ohio App.3d 446, 459. Because Buyer was put on notice and could have easily discovered that the water supply was inadequate, any reliance was not justified. Without proving Sellers represented or concealed a defect that Buyer justifiably relied upon, Buyer's claim for fraud must fail.
Since Buyer failed to establish that he justifiably relied on any misrepresentation or concealment, this Court finds that the judgment was against the manifest weight of the evidence. Accordingly, Sellers' second and third assignment of errors are sustained.
 III.
Sellers' assignments of error are sustained. The judgment of the trial court is reversed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
 ______________________ BETH WHITMORE
FOR THE COURT SLABY, .P. J.
QUILLIN, J., CONCUR
(Quillin, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6 (C), Article IV, Constitution.)
[1] This Court notes that because no transcript was available, a motion to certify a statement of the evidence pursuant to App.R. 9(C) was filed on January 7, 1999 by Sellers. The App.R. 9(C) statement was approved by the Barberton Municipal Court on September 24, 1999. Because the statement contained the trial judge's signature and was time-stamped, this Court finds it complied with App.R. 9(C).
[2] The trial court's order was later amended on February 4, 2000 in order to comply with R.C. 2505.02.